IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

ROBERT W. HUBER, JR.,

    Plaintiff,

    v.                        Case No. 16-CV-19

GLORIA ANDERSON, et al.,

    Defendants.

---

AMENDED DECLARATION OF MICHAEL WALCZAK

---

**MICHAEL WALCZAK** declares as follows under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am an adult resident of the State of Wisconsin. I make this declaration based upon my personal knowledge.

2. I served as a probation and parole agent for the Department of Corrections in Milwaukee County from September 14, 1987 until my retirement on May 16, 2007. During my time as an agent, I served in both the Division of Intensive Sanctions and the Division of Probation and Parole.

3. As a probation and parole agent, my job duties included supervising offenders who had been paroled from prison and offenders who had been sentenced to probation, conducting home visits of these offenders, communicating with victims to whom restitution was owed, communicating with courts regarding offenders

under my supervision, and initiating and pursuing revocation proceedings for offenders who violated the rules of supervision, among other duties.

4. When Mr. Huber's case was assigned to me, he was in absconder status. An individual is absconding when he fails to comply with the conditions of supervision, including but not limited to regular in-person reporting. An offender who is absconding is in violation of the rules of supervision.

5. Attached hereto as Exhibit 1015 is a true and correct copy of my chronological notes from my supervision of Huber from 1998 until 2001, when he was revoked. Chronological notes reflect meetings and other contacts with the offender, and I kept these notes to document my interactions with Huber.

6. I never told Mr. Huber that his probation had been extended for an indeterminate period of time, and I do not recall telling him that I had personally spoken with the victim of his forgery. I have no recollection of whether I spoke with the victim in his case or not.

7. My notes reflect that Huber had failed to report from 1996 until he was picked up on an outstanding warrant on September 21, 1999. At that time, Huber signed a request for reinstatement so that he would not be revoked, and began reporting again. A copy of that paperwork is attached as Exhibit 1016.

8. Huber's file reflected that he had not paid restitution to the victim of the forgery charged for which he was on supervision. The court had ordered restitution in his case. See Anderson Exhibits 1000 and 1002 (judgment of conviction and order extending probation).

9. Attached as Exhibit 1017 is a copy of the receipt detail for Huber's case, listing all payments made between his conviction in 1988 and March of 2000. Beginning in approximately 1996, state law changed to require offenders on supervision to pay supervision fees as part of their court obligations.

10. My notes reflect that between September of 1999 and April of 2000, Huber would periodically report and occasionally make payments toward his court obligations. Prior to September of 1999, Mr. Huber had not previously provided any funds toward restitution since 1993.

11. It was my practice as an agent to place money orders from offenders in my wallet until I was through meeting with the offender, then to provide the money order to the cashier. She would, in turn, send the money to the cashier's unit located in Madison for disbursement.

12. I did not retain the funds that Mr. Huber provided for myself, nor have I ever stolen funds from any offender under supervision.

13. Susan Sam of the cashier's office then contacted me after she was unable to locate victim information that would allow the funds to be applied. The victim was a bank that no longer had records for the victim of the forgery, who was no longer living. Attached as Exhibit 1018 is a copy of the correspondence received from Sam.

14. Because the victim could not be located, I asked that the funds be applied toward Mr. Huber's outstanding supervision fees, which he also owed as a condition of his supervision. Attached as Exhibit 1019 is a copy of a memorandum I filled out directing that the funds be applied to outstanding supervision fees.

15. Because the victim could no longer be located, I wrote a memo to the Milwaukee County Circuit Court asking that the restitution amount be set at zero and explaining the circumstances. Attached as Exhibit 1020 is a true and correct copy of the paperwork filed with the court.

16. Although the restitution had been set at zero, the court did not enter an order discharging Mr. Huber from supervision because he was in absconder status. In addition, he still owed supervision fees to the Department. I sent him a letter to this effect, a copy of which is attached as Exhibit 1021.

17. If Mr. Huber had reported after I sent the letter and paid fees, I would have asked the court that he be discharged from supervision. Instead, he absconded again as he had done a number of times previously.

18. Mr. Huber was picked up in October of 2000 by the West Allis Police Department and ultimately charged by the Milwaukee County District Attorney with a number of charges involving sex with minors.

19. It was customary for me as an agent to keep police records as part of an offender's file, to assess whether revocation was appropriate. A true and correct copy of the incident report and criminal complaint from Mr. Huber's October 2000 arrest, with personal information redacted, are attached hereto as Exhibit 1022.

20. I was not aware that Mr. Huber had accused me of stealing money from him until I testified at his revocation hearing. By that time, I had already made the decision to pursue revocation because he was absconding in violation of the rules of supervision. I was also troubled by the allegations that he had sexually abused children.

- 4 -
Case 2:16-cv-00019-JPS   Document 76   Filed 11/07/16   Page 4 of 6

21. I testified at Mr. Huber's revocation hearing, and the administrative law judge ultimately revoked him on the basis of his absconding. A copy of the transcript is attached as Exhibit 1023.

22. When I testified at the hearing that there might possibly be documents missing from Mr. Huber's file, all I meant was that I was one of many keepers of the file, and that it was not impossible that a document was missing. However, I provided Mr. Huber's attorney with the entire file.

23. Mr. Huber's allegation that I had stolen from him had no bearing whatsoever on my decision to pursue revocation of his probation. Several years after the revocation proceedings, Mr. Huber wrote a letter to my supervisor accusing me of stealing from him and asking to be assigned another agent. A copy of that letter is attached as Exhibit 1024.

24. Mr. Huber's file was ultimately transferred to the sex offender unit because Mr. Huber had been convicted of sexual offenses. The file was not transferred because of any issue with me, and I received no discipline of any kind following Mr. Huber's letter.

25. Some time after sentencing following revocation, Huber's attorney, Andrew Franklin, came to the probation and parole office. I did not discuss the details of Mr. Huber's case with Mr. Franklin. I provided the entire file to the attorney. He asked for copies of approximately half the documents, which I provided, and then left. Had the attorney requested a copy of the entire file, I would have provided the entire file.

26. At all times while supervising Mr. Huber, I believed Mr. Huber to be properly on supervision. It was my understanding that after Mr. Huber signed his request for reinstatement in September of 1999, his supervision date was extended to December 31, 2001, and the paperwork in the file reflected that discharge date.

27. At the time I executed this declaration on October 5, 2016, I believed everything in it to be true and accurate.

28. Between that time and today, I have had occasion to look again at the statement that Mr. Huber provided during the revocation process in October 2000. I noticed that in it he justified his absconding by accusing me of stealing or extorting money from him.

29. Because Mr. Huber had made this accusation in his statement, my earlier statement that I did not learn of the theft allegations until the revocation hearing, as stated in Paragraph 20 above, is incorrect.

30. This does not change my earlier statement that Mr. Huber's allegations that I had stolen from him had no bearing whatsoever to pursue revocation of his probation.

PURSUANT TO 28 USC § 1746, I VERIFY UNDER PENALTY OF PERJURY THAT THE STATEMENTS IN THIS DECLARATION ARE TRUE AND CORRECT AND BASED UPON MY PERSONAL KNOWLEDGE.

Dated this 5th day of November, 2016.

*s/ Michael Walczak*
MICHAEL WALCZAK