CERTIFIED COPY
A True Copy
Teste:
_____
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 17-1302

ROBERT W. HUBER, JR.,

*Plaintiff-Appellant,*

*v.*

GLORIA ANDERSON, *et al.,*

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 16-CV-19-JPS — **J.P. Stadtmueller**, *Judge.*

———————————

ARGUED APRIL 18, 2018 — DECIDED NOVEMBER 26, 2018

———————————

Before WOOD, *Chief Judge*, and FLAUM and EASTERBROOK,
*Circuit Judges*.

WOOD, *Chief Judge*. In 1988, Robert W. Huber, Jr., pleaded
guilty to making fraudulent credit card charges in the amount
of $800. He spent the next 25 years either on probation or in
prison for violating the terms of his probation. Yet Wisconsin
had no lawful basis for extending his sentence beyond No-
vember 3, 1995. It took the state until 2014 to recognize this
problem and to vacate his ongoing sentence.

After his release, Huber filed this action. He sued several state officials for his prolonged sentence and related wrongs. The district court granted the defendants' motion for summary judgment, ruling that Huber had failed to bring most claims within six years of their accrual, as was then required under Wisconsin's statute of limitations. The court ruled that some of Huber's claims were timely, but it granted the defendants summary judgment on the merits of those claims. We conclude that Huber's claims were timely and that summary judgment was premature on those that the district court reached. We therefore reverse in part, vacate in part, and remand for further proceedings.

## I

### A

Huber was sentenced in 1988 to four years' probation for fraudulently using another man's credit card. Three years were added to his probation because he failed to pay restitution. With that extension, his sentence should have ended on November 3, 1995. But it did not. In order to understand the confused course of events that followed, we must look at Huber's less-than-stellar record on probation.

Huber fell into "absconder status" on May 19, 1993, and the state secured an apprehension request for him on January 13, 1994. Shortly thereafter, Gloria Anderson became Huber's probation agent. In November 1994 Huber was arrested on the January apprehension request, but he was released four days later. On the day of his release, Anderson met with Elizabeth Hartman, a Department of Corrections (DOC) Field Supervisor and Anderson's supervisor. Hartman's meeting

notes indicated that Huber's discharge date was still November 3, 1995. Under a section of her notes headed "Positive Adjustment" she wrote that there had been "no new charges," and under a section headed "Current Violations" she noted "absconder since 5-19-93." Despite his lengthy failure to report, the state did not attempt to revoke his probation, nor did it take any steps to "toll" the running of his probation sentence to prevent him from getting credit for the time while he was on the lam. After the November 1994 arrest, Huber began sporadically reporting to probation. In April 1995, Anderson wrote in Huber's chronological case summary that his probation "has been extended 1x already—to discharge 11-3-95." In her last log entry before the discharge date, Anderson wrote "no changes—all ok."

November 3 came and went without any action: no release, no modification of Huber's probation, no formal extension. Two weeks later, without any reference to her repeated notes acknowledging the November 3, 1995, release date, Anderson issued an apprehension request for Huber. He was arrested and jailed on that request in January 1996. While Huber was in jail, Anderson (along with Hartman) told him that his probation had been suspended from May 1993 to November 1994. If that was true, there was outstanding time to be served. They instructed Huber to sign a "Request for Reinstatement" of his probation. He complied, even though he now asserts that the form was blank at the time and later changed to read as if Huber admitted to absconding as of May 19, 1993. Equipped with Huber's signature on the document, Anderson submitted a recommendation to Hartman to reinstate Huber's probation and to suspend the sentence from May 19, 1993, until his reinstatement. Hartman approved, and either

Allan Kasprzak, who was the DOC's Regional Chief for Milwaukee, or a deputy using Kasprzak's signature stamp, issued the order of reinstatement, which continued Huber's probation until July 1998.

Michael Walczak became Huber's probation agent in 1998. By that time, Huber had again absconded, and so he was not earning credit toward his probation. He was arrested on another apprehension request in September 1999. Walczak recommended that Huber's probation be reinstated, with the sentence on hold from April 1996, and so once again, Huber was back on probation. For reasons immaterial to this case, Walczak initiated probation revocation proceedings against Huber in October 2000. Those proceedings resulted in Huber's receiving a ten-year prison sentence. Huber has alleged that Walczak doctored Huber's case file before that revocation hearing, but this allegation also is immaterial for our purposes.

While imprisoned, Huber made numerous efforts to overturn his sentence. He pursued administrative remedies and filed petitions in state and federal court. Nothing he did won his release, but during discovery for his federal petition he obtained a copy of the January 1996 Request for Reinstatement that Anderson had him sign. That form provided the evidence Huber needed to show that Anderson had extended Huber's probation after the state's jurisdiction to do so had lapsed.

In June 2011, shortly before Huber's term of imprisonment expired, Niomi Bock was assigned as Huber's probation agent. According to Huber, after Bock's appointment, Huber had a conference call with Bock, Kathy Walter (Bock's supervisor), and his social worker. He explained why, in his view, the state no longer had jurisdiction to punish him. Huber's

social worker offered to fax documents corroborating Huber's position to the DOC. Huber asked to meet with Bock, Walter, and the DOC's counsel. Bock and Walter denied the requests. When Huber was released from custody in October 2011 he repeatedly told Bock why continuing his probation was unlawful; he begged her to review his supporting materials. Bock conferred with Walter about her professional obligations in light of Huber's statements. Walter told Bock that Bock's duties extended no further than ensuring Huber's compliance with his probation; Bock was not responsible for assessing the validity of Huber's sentence. Walter did call Wisconsin's Central Records Unit ("Records"), which she contends was the final authority for calculating sentences and discharge dates. A Records agent confirmed that Huber was properly on probation. But Walter admitted that she never asked the Records agent if the documents in the DOC's internal management systems were the same as the records Huber had.

Though no longer in prison, Huber had not abandoned his effort to vacate his sentence. He wanted to conduct research, but because of an unrelated conviction, he needed preapproval for computer usage. In October 2011, he sought approval to use a public library's computers. After conferring with Walter, Bock denied the request. She told Huber, however, that if he came to the probation office, an agent would do the research for him for two hours. Huber tried this system on November 16, 2011, but he was frustrated when the agent stalled each time he asked her to find something. Worse than that, she left for 5- to 20-minute intervals. The only fruits of her "two-hour" assistance were the instructions for *pro se* Supreme Court filings. Huber could not print even that; all research had to be saved to a flash drive.

When Huber returned to the probation office the next day to collect the flash drive, Bock presented him with a consent form for sex-offender treatment (another condition of the unrelated conviction). Huber refused to sign unless his signature was marked as being "under protest" because, as he again told Bock, the DOC lacked jurisdiction over him. Bock reported the refusal to Walter, who considered it a breach of probation and had Huber arrested and searched. Agents found an unapproved flash drive in his possession. After this incident, Walter initiated probation revocation proceedings.

A revocation hearing was held in March 2012. Huber argued that the DOC had lost jurisdiction in November 1995 and presented supporting documentation. Bock testified that she was unaware of any 1995 order extending Huber's probation. A record keeper from her office had looked for one in anticipation of the hearing but had come up empty. Nevertheless, the presiding ALJ ordered revocation. The Division of Hearings and Appeals affirmed. Huber then petitioned the Wisconsin Circuit Court for a writ of certiorari, seeking to vacate his sentence because the DOC had lost jurisdiction in November 1995. The Circuit Court granted the writ, but it concluded the factual record was underdeveloped, and so it remanded the case to the Division of Hearings and Appeals for further development.

Following the Circuit Court's order, Sandra Hansen, Walter's replacement, and Sheri Hicks, the Department of Community Corrections Records Director, began investigating. By October 2013, they discovered that Huber had been right all along and that the error had not been uncovered because the state's internal records systems did not accurately reflect that Huber's probation had ended before Anderson's January 1996

No. 17-1302                                                    7

Request for Reinstatement. Hansen notified the ALJ who had presided over Huber's most recent revocation hearing of the error and asked that all of Huber's probation revocations be vacated. Three days later, the Division of Hearings and Appeals vacated the revocations. Hicks then wrote to the Circuit Court, asking it to vacate Huber's sentence. She attached the order of the Division of Hearings and Appeals. Finally, in January 2014, the Circuit Court vacated Huber's sentence, agreeing that the state had lost jurisdiction in November 1995.

B

Huber filed a federal complaint on January 6, 2016. The complaint, which alleged numerous constitutional violations, named as defendants Anderson, Hartman, Kasprzak, Walczak, Bock, and Walter. Most claims survived a magistrate judge's screening order. Both sides then moved for summary judgment. The district court ruled that Wisconsin's six-year statute of limitation barred most of Huber's claims, including:

- the Eighth Amendment claims against Anderson, Hartman, Kasprzak, and Walczak;

- the failure-to-intervene claims against Bock and Walter;

- the First Amendment retaliation claim against Walczak;

- the access to the court claim against Walczak; and

- the denial of the right to vote claims against all defendants.

For the remaining claims, the district court granted summary judgment to the defendants on the merits. Those included:

- the Eighth Amendment claims against Bock and Walter; and

- the access-to-court claims against Bock and Walter.

Huber appeals each part of the district court's judgment.

## II

Though the district court dismissed many of Huber's claims as untimely, Wisconsin reasserts a timeliness defense only for Huber's Eighth Amendment claims against Anderson, Hartman, Kasprzak, and Walczak. As for the rest, Wisconsin concedes the error of the district court's ruling. Because a timeliness defense to a section 1983 claim is not jurisdictional, see *Smith v. City of Chicago Heights*, 951 F.2d 834, 839 (7th Cir. 1992), we consider the timeliness only of the claims that are still contested on that ground.

An action under 42 U.S.C. § 1983 must be brought within the statute of limitations for personal injuries supplied by the state in which the claim arose. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). This case comes to us from Wisconsin, where the limitations period at the time Huber filed this action was six years. See Wis. Stat. § 893.53 (2016), *amended by* 2017 Wis. Act 235 (eff. Apr. 5, 2018) (reducing applicable statute of limitations from six to three years). While we borrow the state's limitations period, federal law determines the action's accrual date. It instructs that accrual occurs when "the plaintiff has 'a complete and present cause of action,' … that is, when 'the plaintiff can file suit and obtain relief.'" *Wallace*, 549 U.S. at 388 (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201 (1997)). Because "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and

seeks immediate or speedier release," *Heck v. Humphrey*, 512 U.S. 477, 481 (1994), any section 1983 action challenging the fact or length of confinement does not accrue until the underlying confinement has been invalidated through a direct appeal, post-conviction relief, or some other means. *Id.* at 486–87, 489–90.

This case calls for no more than a simple application of *Heck*'s rule. Invoking the Eighth Amendment, Huber alleges that defendants, through their deliberate indifference, unlawfully prolonged his custody. Had Huber tried to file this action before January 2014, he would have been blocked by *Heck.* His claim did not accrue until the Circuit Court invalidated his sentence. Huber filed this action in 2016, well within Wisconsin's six-year statute of limitations (and also within its new three-year period).

Wisconsin suggests, however, that Huber could have brought his Eighth Amendment claims between November 1995 and February 2001, and thus they accrued long before January 2014. It argues that during that window, a section 1983 action would not have necessarily implied "the invalidity of his conviction or sentence" but rather "merely implie[d] that through [defendants'] alleged error, Huber's probationary term was mistakenly extended." This position suffers from two problems: most importantly, it betrays a serious misunderstanding of *Heck*; and secondarily, it overlooks Huber's repeated (though at times misguided) efforts to correct the problem.

The main point the state is trying to make is unclear. If it is contending that Huber could have brought a section 1983 action before February 2001 because he had not yet been sentenced to a term of *imprisonment*, that argument runs afoul of

*Heck*'s underlying principle: in any case in which habeas corpus is available, it is the prisoner's exclusive remedy. 512 U.S. at 481. And habeas corpus is available to anyone in custody, probationers included. See *Maleng v. Cook*, 490 U.S. 488, 491 (1989); *Jones v. Cunningham*, 371 U.S. 236, 242 (1963). There was no time after the initial 1995 mistake when Huber was not in custody until his ultimate vindication in 2014, and so his only remedy during that period was habeas corpus. Alternatively, if the state means to assert that *Heck* would not have barred a pre-2001 action because such an action would not have challenged a *court-ordered* sentence, then its argument self-destructs on the basis of *Edwards v. Balisok*, 520 U.S. 641, 646–48 (1997) (ruling that a prisoner could not bring a section 1983 action that necessarily implied the invalidity of prison disciplinary proceedings). *Balisok* holds that *Heck*'s rule extends to a section 1983 action that necessarily assails administrative deprivations of liberty. It is thus immaterial that the reason why Huber's probation was extended between November 1995 and February 2001 may have been inadvertence; the key fact is that his custody was continuous.

Nor is the defendants' comparison of this case to *Wallace v. Kato*, *supra*, apt. While *Heck*'s bar is inapplicable to a section 1983 action that would call into question only a future conviction or anticipated custody, see 549 U.S. at 393, Huber's Eighth Amendment claim seeks redress for unlawful custody that began in November 1995. Had he brought the present case between 1995 and 2001, he would not have been attacking the possibility of unlawful future confinement, as in *Wallace*. See *id.* Rather, his claim would have challenged his prolonged probation and would have been barred under *Heck*.

We recognize that many of Huber's claims relate to events that are now more than 20 years in the past. But that is a natural consequence of the *Heck* rule. And this is not a situation in which the doctrine of laches has any role to play. As our account of Huber's saga illustrates, he did try to contest his custody, but he was acting *pro se* and did not know what steps he needed to take. He did not sit on his rights. If wrongful custody lasts for a long time, then *Heck* will require both parties to litigate over dated civil claims. That is simply the price of the *Heck* doctrine, which normally ensures that civil litigation does not undermine the basis of criminal convictions and sentences.

## III

Wisconsin asks in the alternative that we affirm the grant of summary judgment for each of Huber's claims on the merits. For the claims disposed of as untimely we will not do so. In the interest of orderly proceedings, the district court should be the first stop. We will, however, review the arguments about the claims already disposed of on the merits.

## A

There is no longer any dispute that Huber's custody was unlawfully prolonged. Huber urges that this amounted to a violation of his Eighth Amendment rights. In order to defeat the defendants' summary judgment motion, he had to bring forth evidence that would permit a trier of fact to conclude that his protracted sentence was the product of deliberate indifference on the part of one or more of the defendants. *Figgs v. Dawson*, 829 F.3d 895, 902 (7th Cir. 2016). That standard "re-

quires more than negligence or even gross negligence; a plaintiff must show that the defendant was essentially criminally reckless, that is, ignored a known risk." *Id.*

Most of the defendants prevailed on the statute of limitations ground we already have rejected; this includes Anderson, Walczak, Hartman, and Kasprzak. The situation of Bock and Walter is different. In their cases, the court found that Huber had not presented enough evidence on the merits to defeat the summary judgment motion. For those two, *Figgs* is our most instructive precedent.

In *Figgs*, the plaintiff complained to two prison officials—a recordkeeper and the warden—that he was being held past his actual release date because of an error in the state's paperwork. *Id.* at 899–900. He sued each official, alleging that their deliberate indifference to his complaints violated his Eighth Amendment rights. *Id.* at 902. We ruled that Fishel, the record keeper, was not entitled to summary judgment. *Id.* at 904. Though Fishel had investigated the accuracy of Figgs's assertion, we concluded that a trier of fact could find her investigation to be "so ineffectual that it rose to the level of criminal recklessness and thus constituted deliberate indifference." *Id.* at 905. Upon learning of Figgs's complaint, Fishel reviewed some of the documents stored in the on-site master file, contacted the DOC's central record keeping office to confirm Figgs's sentence, and sent the central record-keeping office part of Figgs's master file for its review. *Id.* at 900–01. But Fishel knew that Figgs was complaining about inaccurate record keeping that could be revealed only by close inspection of the full master file. *Id.* at 904. In the face of that knowledge, she neither undertook such a review nor provided the central record-keeping office the information needed to discover the

error. *Id.* Conversely, we found that Dawson, the prison's warden, was entitled to summary judgment. *Id.* at 903. After he became aware of Figgs's complaint, Dawson consulted Fishel and relied on her calculation. *Id.* at 903. That was a reasonable step for someone in his position, in light of the general rule that prison administrators may rely on staff to perform specifically delegated functions. *Id.* at 903–04.

Wisconsin asserts that Bock and Walter are more comparable to Dawson than to Fishel. It reasons that each defendant did all that her job required: Bock elevated the issue to Walter, and Walter contacted the central records unit. But that description leaves out critical facts. Huber, like Figgs, was not complaining about an administrative or arithmetic error. Verifying his complaint necessitated a close inspection of documents in his file. Bock did not need to guess that this was the case: Huber told her, repeatedly. Huber repeatedly offered to give Bock the corroborating documents or to direct her where to look. Yet she averted her eyes from the substantiating information. Nor is Walter's call to the central records unit conclusive, because she failed to ask the representative to compare the DOC's internal documents to the sequence of events Huber described or even to call the representative's attention to the documents Huber referenced. Without that alert, the records representative could not have been expected to identify the alleged error.

A juror could conclude that despite knowing the nature of Huber's complaint, Bock and Walter performed an investigation that was no more likely to confirm or disprove the legality of Huber's detention than Fishel's investigation was for Figgs. We are not saying that a jury would be required to view the facts this way, but a reasonable jury could find deliberate

indifference here. Indeed, some facts in the record suggest
that final responsibility for the accuracy of Huber's sentence
did not reside with the central records unit. Construing facts
and inferences in Huber's favor, as we must at this stage, Wal-
ter's failure to bring the complaint to the proper authority ex-
hibited deliberate indifference. Huber's Eighth Amendment
claims against these defendants therefore are not suitable for
dismissal at summary judgment.

B

The district court also dismissed on the merits Huber's
claims that Bock and Walter violated his right of access to the
court. But in doing so, the court incorporated the elements of
a retaliation claim. The magistrate judge's screening order
had allowed only the access-to-court claims to proceed, on the
notion that the retaliation claims were "captured in the access-
to-the-courts claim[s] that he is being permitted to pursue."
The district court construed that order to say that Huber's ac-
cess-to-court claims against Bock and Walter were in essence
retaliation claims. It then looked for evidence that Bock or
Walter had retaliated against Huber. Finding none, it granted
summary judgment.

The problem here is a legal one. Huber's access-to-court
claim was distinct from his retaliation claim. The phrasing
that the magistrate judge chose may have obscured this fact.
There is an independent constitutional right to meaningful ac-
cess to the courts. *Bounds v. Smith*, 430 U.S. 817, 828 (1977). For
people in custody, that might require providing access to le-
gal materials needed to research both the law and facts that
might support a cause of action. *Brooks v. Buscher*, 62 F.3d 176,
179 (7th Cir. 1995). If restricting access too severely frustrates
the pursuit of an independent, non-frivolous legal right, then

there is a violation of the right of access to the court. *Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004). Alternatively, if a person is denied access to research materials in retaliation for filing grievances, for instance, there is an independent retaliation claim. On remand, the district court must sort out these two theories. In addition, it should consider whether the defendants are entitled to immunity for positions they took in litigation during the administrative proceedings, or if something along the lines of *Brady v. Maryland*, 373 U.S. 83 (1963), might furnish the basis for liability, if or to the extent that Huber is asserting that the defendants withheld exculpatory materials from the decision-makers.

## IV

Huber's claims are old, but because of *Heck* old does not necessarily mean untimely. The district court should not have dismissed any of Huber's claims as having been filed outside the governing limitations period. Moreover, dismissal of the four claims that were considered on the merits was premature. We therefore REVERSE the grant of summary judgment in favor of Bock and Walter on Huber's Eighth Amendment claims, VACATE the grant of summary judgment on all other claims, and REMAND for further proceedings. We DENY Huber's request to assign this case to a different district court judge pursuant to Circuit Rule 36.

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov



CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

**FINAL JUDGMENT**

November 26, 2018

Before:          DIANE P. WOOD, Chief Judge

JOEL M. FLAUM, Circuit Judge

FRANK H. EASTERBROOK, Circuit Judge

|  |  |
|---|---|
| No. 17-1302 | ROBERT W. HUBER, JR.,<br>Plaintiff - Appellant<br><br>v.<br><br>GLORIA ANDERSON, et. al.,<br>Defendants - Appellees |

| **Originating Case Information:** |
|---|
| District Court No: 2:16-cv-00019-JPS<br>Eastern District of Wisconsin<br>District Judge J. P. Stadtmueller |

We **REVERSE** the grant of summary judgment in favor of Bock and Walter on Huber's Eighth Amendment claims, **VACATE** the grant of summary judgment on all other claims, and **REMAND** for further proceedings. We **DENY** Hu-ber's request to assign this case to a different district court judge pursuant to Circuit Rule 36. The above is in accordance with the decision of this court entered on this date. Costs taxed against the State (Anderson, et al.).

form name: **c7_FinalJudgment**(form ID: **132**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

December 18, 2018

To:    Stephen C. Dries
       UNITED STATES DISTRICT COURT
       Eastern District of Wisconsin
       Milwaukee , WI 53202-0000

|  |  |
|---|---|
| No. 17-1302 | ROBERT W. HUBER, JR.,<br>Plaintiff - Appellant<br><br>v.<br><br>GLORIA ANDERSON, et. al.,<br>Defendants - Appellees |

| **Originating Case Information:** |
|---|
| District Court No: 2:16-cv-00019-JPS<br>Eastern District of Wisconsin<br>District Judge J. P. Stadtmueller |

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A
certified copy of the opinion/order of the court and judgment, if any, and any direction as to
costs shall constitute the mandate.

RECORD ON APPEAL STATUS:        No record to be returned

**NOTE TO COUNSEL:**

If any physical and large documentary exhibits have been filed in the above-entitled cause, they are

to be withdrawn ten (10) days from the date of this notice. Exhibits not withdrawn during this period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.

**Date:**                                          **Received by:**

12/18/18                                          s/Jelena Vekic
_____          _____


form name: **c7_Mandate**(form ID: **135**)