# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ROBERT W. HUBER, JR.,<br><br>                 Plaintiff,<br><br>v.<br><br>GLORIA ANDERSON, ELIZABETH HARTMANN, MIKE WALCZAK, NIOMI BOCK, KATHY WALTER, and ALLAN KASPRZAK,<br><br>                 Defendants. | Case No. 16-CV-19-JPS<br><br>**ORDER** |

**1.    INTRODUCTION**

In 1988, Plaintiff was sentenced in the Milwaukee County Circuit Court to a 4-year term of probation for forgery. He alleges that Defendants, current or former employees of the Wisconsin Department of Corrections ("DOC"), continued to exercise supervision over him long after his probation term had expired. Plaintiff was correct, and though he complained about this for years, the DOC only acknowledged its mistake in 2014. In January 2016, he filed this suit against Defendants for false imprisonment and other claims related to his continued probation.

For the better part of this case, Plaintiff proceeded *pro se*. The Court granted summary judgment to Defendants in December 2016 and dismissed the action entirely. (Docket #97). Plaintiff appealed, and two years later, the Court of Appeals reversed this Court's dismissal and vacated the summary judgment decision. (Docket #120). On remand, Plaintiff obtained counsel. The Court then entered a trial scheduling order which included additional time for discovery and dispositive motion

practice. (Docket #127). Thereafter Defendants took the opportunity to file a new summary judgment motion. (Docket #132). For the reasons explained below, that motion must be denied.

2.  **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A "genuine" dispute of material fact is created when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court construes all facts and reasonable inferences in a light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

In assessing the parties' proposed findings of fact, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010). Internal inconsistencies in a witness's testimony "'create an issue of credibility as to which part of the testimony should be given the greatest weight if credited at all.'" *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1170 (7th Cir. 1996) (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986)). The non-movant "need not match the movant witness for witness, nor persuade the court that [its] case is convincing, [it] need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

3. **RELEVANT FACTS**

Despite the parties' protracted disagreements associated with this action, they do not actually dispute the facts material to Defendants' motion. Plaintiff attempted to dispute Defendants' statements of fact, but ultimately failed to do so in accordance with the applicable procedural rules. Those rules provide that a response to a statement of facts must include "a response to each paragraph, including, in the case of any disagreement, specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon[.]" Civ. L. R. 56(b)(2)(B)(i); *see also* Fed. R. Civ. P. 56(c)(1). While Plaintiff did respond to each of Defendants' proposed facts, and stated that he disputed certain facts, almost none of are accompanied with appropriate citations to the record. *See generally* (Docket #138). Plaintiff's refusal to follow the rules of summary judgment procedure means that the Court must deem Defendants' proposed facts largely undisputed. Fed. R. Civ. P. 56(e). Defendants, for their part, have stated that they do not deny any of Plaintiff's statements of fact for purposes of their motion. (Docket #143 at 10 n.4).

Thus, for purposes of deciding Defendants' motion, the undisputed material facts are as follows. In 1988, Plaintiff was convicted of forgery and sentenced to four years of probation. In 1992, the probation term was extended for three additional years to provide Plaintiff additional time to pay his restitution obligation. Thus, the now extended probation term was scheduled to conclude on November 3, 1995. Defendant Gloria Anderson ("Anderson") became Plaintiff's probation agent in February 1994. When she took over, an apprehension request was already pending for Plaintiff. Plaintiff's prior probation agent issued the request, alleging that Plaintiff

had failed to report to the agent since May 19, 1993. In June 1994, Anderson filed a recommendation for administrative action seeking to stop the expiration of Plaintiff's time on probation. The request was approved, and Plaintiff's probation time was administratively stopped effective May 19, 1993.

Plaintiff was apprehended in November 1994. Anderson and her supervisor, Defendant Elizabeth Hartmann ("Hartmann"), were staffed on the case. Because Plaintiff had not committed any new crimes while classified as an absconder, he was released back on to probation four days later. According to the DOC operations manual in force at the time, Anderson was required to make a determination as to whether Plaintiff should receive credit on his probation sentence for the time while absconding. Once that administrative task was completed, Plaintiff's probation time could only be legally tolled if he admitted to absconding on a reinstatement form, or he was found guilty of such in a revocation proceeding. Anderson's contemporaneous notes indicate that she planned on *not* giving Plaintiff credit for his time spent absconding. She did not, however, follow through with the necessary paperwork. As a result, although Plaintiff's probation time had been administratively stopped, it was never legally tolled during his absconding interlude.

November 3 came and went without any action by Anderson. Her notes reflect that Plaintiff reported to her only sporadically throughout 1995, and on November 17, 1995, she issued an apprehension request for him. This request was approved by Hartmann. Hartmann later acknowledged that she did not review Anderson's notes or Plaintiff's case file prior to giving her approval. Hartmann admitted that, if she had

reviewed the notes, she would not have considered Plaintiff to be an absconder.

Plaintiff was picked up on January 5, 1996. A few days later, Anderson met with Plaintiff. She told him that his probation time had been tolled for having absconded during the 1993-1994 period, and so his probation term had not been completed. She informed Plaintiff that he could either sign a request for reinstatement on probation, or he would remain in jail and she would seek revocation. Plaintiff chose to sign the reinstatement request. Plaintiff claims that at the time he signed it, the form did not specify the reason for reinstatement, and that someone later penciled in that the reason was his absconding.

Based on that form, an order was issued in March 1996 reinstating Plaintiff's probation. The form bore the signature of Defendant Allan Kasprzak ("Kasprzak"), the regional chief of the DOC for Milwaukee County. Plaintiff notes that Kasprzak denies physically signing the form; his signature would have been stamped on the form by someone else. He never reviewed any documents from Plaintiff's file prior to allowing his name to be stamped on the form. Further, Kasprzak's secretary, the most likely person to stamp his name, had no training as a probation agent and did not herself review any documents.

In 2000, while still on probation, Plaintiff was arrested and charged with new crimes. His then current probation agent, Defendant Michael Walczak ("Walczak"), initiated revocation proceedings against Plaintiff. Plaintiff's probation was revoked and he received a "withheld" ten-year sentence. Plaintiff was also convicted of the new crimes, which kept him incarcerated until 2011.

By the time he was released, Plaintiff had investigated his probation history and determined that the DOC had lost jurisdiction over him back in 1995. He raised this argument with his new probation agent, Defendant Niomi Bock ("Bock"), who relayed his concerns to her supervisor, Defendant Kathy Walter ("Walter"). Walter says she contacted the Central Records Unit ("CRU"), which informed her that Plaintiff was still properly on probation. During her deposition, Walter admitted that she did not make any notes about contacting the CRU on this matter, despite the requirement that she note all of her actions in Plaintiff's file.

Bock continued to supervise Plaintiff, though he was none too pleased with the situation. Because his 2001 conviction included sex offenses, Plaintiff was subject to certain rules of supervision particular to sex offenders, including a prohibition on using a computer without his agent's prior approval. Plaintiff nevertheless had a strong desire to continue researching the law related to his jurisdictional concerns.

In November 2011, Plaintiff informed Bock that he wanted to research the preparation of a petition for a writ of certiorari to the Supreme Court and type out such a document. The petition was to be filed in a habeas action Plaintiff had commenced attacking the 2001 probation revocation, which was pending in this district before Judge William Griesbach. Plaintiff wanted to do his research at the Marquette University Law Library, but Bock refused to permit him. Instead, Bock attempted to accommodate Plaintiff's research needs by allowing him to use a DOC computer in the probation office and a flash drive where he could save his work. Plaintiff says that this accommodation was almost comically ineffective.

The day after Plaintiff conducted his research in the probation office, Bock asked him to sign a form consenting to sex offender treatment. He refused to do so without also writing on the form that he objected to being forced to sign, as he felt this would preserve his jurisdictional arguments. Bock contacted Walter, who determined that Plaintiff's behavior constituted a failure to comply with the treatment program. Walter ordered that Plaintiff be arrested on the spot. Bock then found that Plaintiff had been misusing the DOC-supplied flash drive and initiated revocation proceedings against him. Bock later admitted that there was no formal requirement that Plaintiff sign the sex offender forms without qualification.

During the revocation proceedings, conducted in March 2012, Plaintiff presented his jurisdictional argument to the presiding administrative law judge ("ALJ"). The ALJ, finding some merit in Plaintiff's position, allowed Plaintiff to present further argument on the matter at the final revocation hearing. Plaintiff maintained that without a violation report, apprehension request, or any other paperwork being issued prior to November 3, 1995 which would extend his probation, it lapsed on that date. The ALJ asked Bock to review the file and see if there were any orders extending Plaintiff's probation prior to November 3, and she reported that none could be found. This was, incidentally, the first time she actually reviewed Plaintiff's entire file despite his many prior complaints about the jurisdictional issue.

Despite being presented with this information, the ALJ ultimately rejected Plaintiff's position and revoked his probation. The ALJ felt that Plaintiff's repeated absconding and the various abortive attempts to stop or toll his probation demonstrated that the DOC did not lose jurisdiction

over him. Plaintiff sought judicial review of the ALJ's determination. The circuit court remanded the matter to the ALJ for additional factfinding. On remand, the ALJ asked the DOC to review its file once again. At that time, in consultation with legal counsel, a DOC supervisor named Sandra Hansen ("Hansen") determined that the DOC did in fact lose jurisdiction over Plaintiff on November 3, 1995. The ALJ then vacated prior revocation orders and the "withheld" sentence imposed in 2000.

**4. ANALYSIS**

Plaintiff presents a litany of claims in this action:

1) False imprisonment, in violation of the Eighth Amendment, against all Defendants;

2) Failure-to-intervene to prevent Plaintiff's false imprisonment, in violation of the Eighth Amendment, against Bock and Walter;

3) Interference with Plaintiff's right of access to courts, in violation of the First Amendment, against Bock, Walter, and Walczak;

4) Retaliation, in violation of the First Amendment, against Walczak; and

5) The denial of Plaintiff's right to vote, in violation of the First Amendment, against all Defendants.

Defendants seek dismissal of each claim. The Court will address each claim in turn, grouping them where appropriate.

**4.1 False Imprisonment – All Defendants**

The centerpiece of Plaintiff's case is his claim that he was falsely imprisoned by being kept on probation pursuant to the 1988 judgment beyond the November 3, 1995 discharge date. Defendants do not deny that Plaintiff was indeed kept on probation well beyond his November 3, 1995 discharge date and do not directly attack this claim on its merits.

Instead, their only argument for dismissal is that they are entitled to qualified immunity.

Qualified immunity protects government officials from civil liability when they perform discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Put simply," says the Supreme Court, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Plaintiff bears the burden to defeat the defense once raised and must establish two elements to do so. *Weinmann v. McClone*, 787 F.3d 444, 450 (7th Cir. 2015). First, Plaintiff must proffer facts which, if believed, amount to a violation of his constitutional rights. *Id.* Second, he must show that his right to be free from such a violation was "clearly established under applicable law at the time and under the circumstances that the defendant official acted." *Easterling v. Pollard*, 528 F. App'x 623, 656 (7th Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). To be clearly established, "precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589–90 (2018) (citations and quotations omitted). While courts "do not require a case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Defendants admit that keeping a prisoner in custody beyond his release date can violate the Eighth Amendment's prohibition on cruel and

unusual punishment, so long as the extended imprisonment came as the result of the government official's deliberate indifference to the problem. *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001). To find that an official acted with deliberate indifference requires proof of two facets of his state-of-mind. First, the official must have subjective knowledge of a serious risk of harm to the prisoner. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Armed with that knowledge, the official must then disregard the risk, either intentionally or at least recklessly. *Id.* "Even if a defendant recognizes the substantial risk, he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 843 (1994)). In the context of this case, deliberate indifference would mean that Defendants knew of a serious risk that Plaintiff would be kept in custody beyond his proper discharge date, but intentionally, or at least recklessly, ignored that risk.

Defendants argue that a reasonable official in their positions could have believed that the DOC did not lose jurisdiction over Plaintiff on November 3, 1995. They note that while Anderson did not legally toll Plaintiff's probation time, there were many indications that she tried to, and at the very least, the time had been administratively stopped. Further, Defendants maintain Anderson had good cause to toll Plaintiff's time due to his alleged periods of absconding. Defendants also assert that Wisconsin law permits the exercise of continued probation authority beyond the discharge date so long as revocation proceedings are instituted within a reasonable time after that date. An error in the application of state law does not automatically equate to deliberate indifference. *Campbell*, 256 F.3d at 700.

Finally, Defendants point to two judicial decisions related to Plaintiff's jurisdictional argument as evidence that learned minds could differ as to whether jurisdiction had truly been lost. First is the ALJ's final ruling in Plaintiff's revocation proceedings, which was later reversed. Second is Judge Griesbach's order dismissing Plaintiff's habeas action. *Robert W. Huber, Jr. v. Jeffrey Pugh*, 10-CV-435-WCG (E.D. Wis.), (Docket #40). This citation is curious, as the basis for the dismissal was the untimeliness of Plaintiff's petition. *Id.* at 1–2. In dicta, Judge Griesbach stated that

> [e]ven aside from the problem of timeliness, . . . it appears that [Plaintiff] is not entitled to relief. The [State's] response establishes that [Plaintiff]'s term of probation was repeatedly tolled due to his admitted absconding from supervision, and he therefore remained on probation at the time of his revocation.

*Id.* at 3. These observations are contrary to the facts before this Court, and indeed contrary to the DOC's later admission that it lost probation jurisdiction.

Defendants confusingly attempt to shoe-horn these arguments into the second qualified immunity element—perhaps intentionally obfuscating the matter—but the shoe only fits under the first element. Defendants, in essence, claim that Plaintiff cannot establish their intentional or reckless disregard of the risk that his probation would be overextended. Rather, they claim that they were faced with legitimate evidence for and against the continued exercise of probation jurisdiction and had a reasonable basis to take the position that jurisdiction was appropriate.

This argument fails to evaluate the record in a light most favorable to Plaintiff, as the Court must do at the summary judgment stage. The

undisputed material facts, and the inferences which may be drawn therefrom, demonstrate the following. Anderson indisputably failed to file the appropriate paperwork to extend Plaintiff's probation. She of course had actual knowledge of this deficiency, and yet still issued the tardy apprehension request. For each defendant entering the saga after Anderson, they could have performed the same investigation that Hansen did in 2013. Indeed, it may have been a simpler task for those coming earlier in time, as Plaintiff's file would have been less voluminous. Instead, each Defendant chose to ignore Plaintiff's repeated attempts to raise the jurisdictional issue. In other words, when confronted with a potential problem with what they were doing, Defendants engaged in the ostrich defense. A reasonable jury could find that Defendants were actually aware of a serious risk that Plaintiff was being held overlong on probation and did not respond reasonably to that risk. *See Watford v. Miller*, No. 09-CV-244-WCG, 2010 WL 1257812 (E.D. Wis. Mar. 26, 2010).

Each of Defendants' contentions outlined above, from a genuine belief in the correctness of tolling Plaintiff's probation time, to an innocent misapplication of state law, to the prior opinions of other judges, all bear on the disputed issue of Defendants' state-of-mind. The Court cannot resolve that dispute on the record before it, whether in the context of qualified immunity or in a direct attack on the merits of Plaintiff's claim. Defendants are left to convince a jury that their collective failure to piece together Plaintiff's probation record, as Hansen did, was merely negligent and not intentional.

Viewing the evidence in the appropriate fashion also makes short work of the second element of qualified immunity. In the parlance of *Wesby*, the "rule" Plaintiff seeks to apply here is as follows: was it clearly

undisputed material facts, and the inferences which may be drawn therefrom, demonstrate the following. Anderson indisputably failed to file the appropriate paperwork to extend Plaintiff's probation. She of course had actual knowledge of this deficiency, and yet still issued the tardy apprehension request. For each defendant entering the saga after Anderson, they could have performed the same investigation that Hansen did in 2013. Indeed, it may have been a simpler task for those coming earlier in time, as Plaintiff's file would have been less voluminous. Instead, each Defendant chose to ignore Plaintiff's repeated attempts to raise the jurisdictional issue. In other words, when confronted with a potential problem with what they were doing, Defendants engaged in the ostrich defense. A reasonable jury could find that Defendants were actually aware of a serious risk that Plaintiff was being held overlong on probation and did not respond reasonably to that risk. *See Watford v. Miller*, No. 09-CV-244-WCG, 2010 WL 1257812 (E.D. Wis. Mar. 26, 2010).

Each of Defendants' contentions outlined above, from a genuine belief in the correctness of tolling Plaintiff's probation time, to an innocent misapplication of state law, to the prior opinions of other judges, all bear on the disputed issue of Defendants' state-of-mind. The Court cannot resolve that dispute on the record before it, whether in the context of qualified immunity or in a direct attack on the merits of Plaintiff's claim. Defendants are left to convince a jury that their collective failure to piece together Plaintiff's probation record, as Hansen did, was merely negligent and not intentional.

Viewing the evidence in the appropriate fashion also makes short work of the second element of qualified immunity. In the parlance of *Wesby*, the "rule" Plaintiff seeks to apply here is as follows: was it clearly

undisputed material facts, and the inferences which may be drawn therefrom, demonstrate the following. Anderson indisputably failed to file the appropriate paperwork to extend Plaintiff's probation. She of course had actual knowledge of this deficiency, and yet still issued the tardy apprehension request. For each defendant entering the saga after Anderson, they could have performed the same investigation that Hansen did in 2013. Indeed, it may have been a simpler task for those coming earlier in time, as Plaintiff's file would have been less voluminous. Instead, each Defendant chose to ignore Plaintiff's repeated attempts to raise the jurisdictional issue. In other words, when confronted with a potential problem with what they were doing, Defendants engaged in the ostrich defense. A reasonable jury could find that Defendants were actually aware of a serious risk that Plaintiff was being held overlong on probation and did not respond reasonably to that risk. *See Watford v. Miller*, No. 09-CV-244-WCG, 2010 WL 1257812 (E.D. Wis. Mar. 26, 2010).

Each of Defendants' contentions outlined above, from a genuine belief in the correctness of tolling Plaintiff's probation time, to an innocent misapplication of state law, to the prior opinions of other judges, all bear on the disputed issue of Defendants' state-of-mind. The Court cannot resolve that dispute on the record before it, whether in the context of qualified immunity or in a direct attack on the merits of Plaintiff's claim. Defendants are left to convince a jury that their collective failure to piece together Plaintiff's probation record, as Hansen did, was merely negligent and not intentional.

Viewing the evidence in the appropriate fashion also makes short work of the second element of qualified immunity. In the parlance of *Wesby*, the "rule" Plaintiff seeks to apply here is as follows: was it clearly

established as of November 1995 that keeping Plaintiff on probation while refusing to investigate whether it was appropriate to do so would violate his Eighth Amendment rights? The answer to the question is indisputably yes. This is self-evident from the Eighth Amendment alone; every DOC official must know that incarcerating a person beyond his judicially-imposed term of imprisonment is cruel punishment (to say nothing of a grave intrusion upon the separation of powers). And more particular to this case, trained DOC personnel like Defendants would also know that the lack of appropriate paperwork tolling Plaintiff's probation time meant that it was not, in fact, legally tolled. Finally, if judicial guidance was truly necessary, the Court of Appeals believes that it was already in existence at the time; *Campbell* cites cases from other circuits pre-dating 1995 for the proposition that deliberate indifference to the propriety of a prisoner's continued custody violates the Eighth Amendment. *Campbell*, 256 F.3d at 700; *see Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir. 1993) ("Deliberate indifference has been demonstrated in those cases where prison officials were put on notice and then simply refused to investigate a prisoner's claim of sentence miscalculation. *Alexander v. Perrill*, 916 F.2d 1392, 1398 (9th Cir. 1990) [.]").[1]

---

[1] In their reply, Defendants state that "the Wisconsin Court of Appeals had indicated, in a case decided prior to 1996, that DOC may seek to revoke based on a violation committed during the probation period if it initiates revocation proceedings within a reasonable time after the period ends." (Docket #143 at 4–6). This suggests that Defendants wish to rely on Wisconsin case law as "clearly establishing" the validity of their actions. If this is true, Defendants miss the mark entirely. The only case law upon which they may rely for qualified immunity purposes is *constitutional* law, namely that interpreting the Eighth Amendment. Just as a misapplication of state law does not necessarily imply deliberate indifference, adherence with state law does not automatically absolve Defendants from such liability.

### 4.2 Failure to Intervene to Prevent False Imprisonment – Bock and Walter

Defendants do not offer any distinct arguments for dismissal of the failure-to-intervene claim beyond their desire for qualified immunity. *See generally* (Docket #133). Because qualified immunity is inapplicable to the underlying false imprisonment claim against all Defendants, the Court will likewise not dismiss the failure-to-intervene claim against Bock and Walter.

### 4.3 Access-to-Courts – Bock and Walter

Prisoners have a First Amendment right to access the courts for redress of legitimate legal claims. To prove a violation of this right, the prisoner must first prove "that prison officials failed to assist in the preparation and filing of meaningful legal papers," and if this is established, he must further "show some quantum of detriment caused by the challenged conduct of state officials." *Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004). Plaintiff asserts that Bock and Walter violated this right when they denied him access to the Marquette University Law Library, forced him to conduct ineffectual legal research through a supervising probation agent, and then arrested him for refusing to sign his supervision rules without protest. (Docket #141 at 18–19). These actions thwarted his ability to file a petition for certiorari with the Supreme Court in the habeas action that Judge Griesbach had earlier dismissed.

Defendants seek dismissal of this claim on three grounds. First, Defendants maintain that Plaintiff has no right to demand access to computerized or internet-based legal research. Though it was unclear in his prior filings, Plaintiff now disclaims any such demand. He states that he only wanted to visit the law library, and that Bock denied the request,

insisting that he conduct legal research in the probation office under the supervision of another agent. *Id.* at 18. It is undisputed that Plaintiff was not allowed access to the law library, and Plaintiff contends that the supervised research was not adequate to research the grounds for his petition. Further, Plaintiff's subsequent arrest foreclosed any ability to file his petition for certiorari because his legal papers did not timely follow him through the prison system. A reasonable jury could conclude that Plaintiff was not afforded meaningful access to courts.

Second, Defendants argue that Plaintiff cannot establish prejudice stemming from their alleged interference with his legal research and attempted filing. But Plaintiff explains how Bock and Walter substantially impeded, if not outright frustrated, his ability to file his petition for certiorari. Defendants further claim that prejudice cannot be founded on a petition for discretionary review as Plaintiff sought here. Their sole citation on the point is a thirty-year-old decision, *Sahagian v. Dickey*, 827 F.2d 90 (7th Cir. 1987), which does not support their contention. *Sahagian* states that "the right of access to the courts has not been extended to encompass an obligation on the part of a state to provide a law library or legal materials to an inmate pursuing a discretionary direct review." *Id.* at 98.

This holding came in the context of an inmate seeking review of his criminal conviction via a petition for review in the Wisconsin Supreme Court. *Id.* at 98–99. The court found that the prisoner was afforded adequate access to courts because he was represented at trial and on appeal. *Id.* The public defender then refused to represent the prisoner in a petition for review because the defender felt the petition would be frivolous. *Id.* The defender then filed a placeholder petition on the

prisoner's behalf, and retained counsel later submitted a supplemental petition, which was denied. *Id. Sahagian* reviewed U.S. Supreme Court law on the matter and concluded that the need for adequate legal research is far more acute in civil rights and habeas actions than in a discretionary appeal in a criminal proceeding. *Id.* at 97–98.

Thus, *Sahagian* actually supports rather than detracts from the view that Plaintiff had a protected interest in filing his petition for certiorari. The opinion's legal analysis demonstrates that the "discretionary direct review" it contemplated was that found in criminal, not civil, cases. This is buttressed by the case's factual underpinnings, which rely heavily on the work of the public defender who assisted the prisoner up to the point of filing a finalized petition for review. In sum, Defendants have not shown that interference with the filing of a petition for certiorari in a habeas action can never be the basis of an access-to-courts claim.[2]

Defendants' final basis for dismissal is qualified immunity. They raise the argument in their opening brief solely on the ground that Plaintiff "can point to no clearly established law stating that a probationer must be given access to internet-based research." (Docket #133 at 12). Not only does this position miss the mark factually, the parties both cite ample authority predating Bock's and Walter's actions requiring them to afford

---

[2]If Defendants' position were accepted, then any "discretionary" legal action, such as the filing of a Section 1983 complaint, could not supply the foundation for an access-to-courts claim. The mere fact that a particular filing may be accepted or rejected does not mean that a prisoner's right to file it is not protected. *See Phillips v. Hust*, 477 F.3d 1070, 1076 (9th Cir. 2007) ("We think it equally apparent that where the suit underlying an access to the courts claim was to be brought in a court having discretionary jurisdiction, the plaintiff need not establish, ex post, that the court would have exercised its discretion and accepted the case."), *judgment vacated on other grounds*, 555 U.S. 1150 (2009).

Plaintiff meaningful access to legal research resources. *See, e.g.*, *Lehn*, 364 F.3d at 866–70. Defendants do not further discuss their qualified immunity argument in their reply brief. *See* (Docket #143 at 7–8). The Court concludes that Defendants have failed to show entitlement to summary judgment on qualified immunity as to the access-to-courts claim against Bock and Walter.[3]

### 4.4 Access-to-Courts and Retaliation – Walczak

Defendants' opening brief supplies no good reasons for dismissing either of the First Amendment claims against Walczak. As to the access-to-courts claim, they mention Walczak's name once but then focus all of their attention on the actions of Bock and Walter. (Docket #133 at 10–13). As to the retaliation claim, Defendants state that this Court originally denied the claim on its merits, and that that decision should stand. *Id.* at 13. This is completely false; the Court dismissed the claim as time-barred, (Docket #97 at 14–15), and the Court of Appeals reversed that ruling in light of Defendants' concession that it was in error, (Docket #120 at 8).

In their reply, Defendants acknowledge these mistakes and ask for "an opportunity to supplement the record and address these claims." (Docket #143 at 6). This request will be denied. The dispositive motion deadline in this case is, indeed, a deadline which should have been taken seriously. The Court need not save Defendants from their failure to give this case an appropriate level of attention to detail. Further, to allow additional briefing at this late stage is a non-starter as it would disturb the

---

[3]The Court of Appeals instructed this Court to "sort out" whether Plaintiff also sought to assert a retaliation claim against Bock and Walter for this conduct. (Docket #120 at 14–15). On summary judgment, Defendants have not argued for the dismissal of such a claim, *see generally* (Docket #133), and Plaintiff has made no attempt to assert or defend one, *see generally* (Docket #141). The Court concludes, therefore, that no separate retaliation claim actually exists.

trial date in this matter. This case has been pending since January 2016, involving significant party and court resources. The case is more than past due for a trial and an ultimate conclusion.

### 4.5 Right-to-Vote – All Defendants

Defendants present two arguments for dismissal of the right-to-vote claim, neither of which has merit. First, Defendants note that the right-to-vote claim is dependent on the survival of the other claims. If those are dismissed, this one should be too. As explained above, the other claims will not be dismissed. Second, Defendants maintain that Plaintiff is currently being incarcerated for new crimes of which he was convicted in 2014, and so he cannot demonstrate a causal connection between their misconduct and his present inability to vote. Plaintiff counters that he at least lost his right to vote from 1995 until the 2001 conviction. Additionally, he posits that had he been properly released from probation in 1995, his 2001 sentence may have been shorter, thus supplying another substantial period where his voting rights were cut off by the improper extension of the original 1988 probation. Plaintiff has satisfied his burden to come forward with some evidence of an injury to his voting rights. A jury must decide the gravity of Plaintiff's injury and to what extent Defendants are the source of that harm.

### 5. CONCLUSION

In light of the foregoing, Defendants' motion for summary judgment must be denied in its entirety.

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment (Docket #132) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 1st day of October, 2019.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge